USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 3 0 2021

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

ZEHRA JAFFERY,

                              Plaintiff,

         -against-

DOWNTOWN PHARMACY, INC., JAMES LEUNG,
and EUGENE OSNIS,

                             Defendants.

------------------------------------------------------------ x

**MEMORANDUM DECISION AND ORDER**

20 Civ. 3437 (GBD)

GEORGE B. DANIELS, United States District Judge:

      Plaintiff Zehra Jaffery brings this employment discrimination action against her former employers, Defendants Downtown Pharmacy, Inc., James Leung, and Eugene Osnis. (Compl., ECF No. 1.) Plaintiff asserts federal claims of racial discrimination, both in the form of adverse employment action and a hostile work environment, and retaliation in violation of 42 U.S.C. § 1981. (*Id.* ¶¶ 268–281.) Additionally, Plaintiff alleges state and local law claims of sex discrimination, race discrimination, national origin discrimination, religious discrimination, and retaliation in violation of the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"), and failure to pay overtime wages in violation of the New York Labor Law ("NYLL"). (*Id.* ¶¶ 196–267, 282–290.)

      Defendants move to dismiss Plaintiff's complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Notice of Defs. Downtown Pharmacy, Inc., James Leung and Eugene Osnis's Mot. to Dismiss Pl.'s Compl. Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 9.) Defendants principally contend that Plaintiff has not pled sufficient facts to plausibly allege racial discrimination and retaliation under Section 1981. And because Plaintiff's sole basis for federal jurisdiction is her claims under Section 1981, Defendants

argue that upon their dismissal, this Court must also dismiss her state and city law claims. Defendants also argue that Plaintiff has failed to state a claim for unpaid overtime wages and that her claims under NYSHRL and NYCHRL are barred, to the extent that they concern events that fall outside the three-year statute of limitations. Defendants' motion is GRANTED to the extent that Plaintiff's claims for retaliation under Section 1981 (Count 12) and unpaid overtime wages under NYLL (Count 13) are dismissed.

## I.   FACTUAL BACKGROUND [1]

Plaintiff is a South Asian woman of Pakistani heritage who identifies as Muslim. (Compl. ¶¶ 11, 24.) She was first hired by Defendants in August 2015 as a pharmacy technician. (*Id.* ¶ 24.) Plaintiff reported to Defendants Leung and Osnis, both co-owners of Defendant Downtown Pharmacy. (*Id.* ¶¶ 3–4, 27, 30.) Plaintiff alleges that she was subjected to repeated and persistent harassment throughout her employment.

Plaintiff claims that such harassment began as early as October 2015, when Osnis and Leung refused to give her a day off to attend an event at her mosque. (*Id.* ¶ 34.) Additionally, when Defendants ordered pork for lunch, they would mockingly ask whether Plaintiff wanted to join them, despite knowing that Plaintiff did not eat pork for religious reasons. (*Id.* ¶ 35.) On one such occasion, a manager of Downtown Pharmacy gave Plaintiff a sandwich without telling her it contained bacon. (*Id.* ¶ 37.) When Plaintiff confronted the manager and Osnis, they laughed. (*Id.* ¶ 42.) Similarly, at holiday parties in December 2015 and 2016, Osnis and Leung badgered Plaintiff to drink alcohol, though Plaintiff had made clear to her coworkers in the days leading up

---

[1] The following facts are taken from Plaintiff's complaint. Because this Court is considering a Rule 12(b)(6) motion, this Court "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

to the party that she did not drink alcohol because of her religious beliefs. (*Id.* ¶¶ 47–53, 88–90.) After Plaintiff refused the offered drinks, Defendants grew visibly annoyed and questioned why Plaintiff was even attending the party. (*Id.* ¶ 52; *see also id.* ¶ 90.)

At work, Osnis would ask Plaintiff whether she was associated with the terrorist organization ISIS. (*Id.* ¶¶ 57–60.) He also asked whether she was involved in the September 11, 2001 attacks. (*Id.*) When Plaintiff reported these comments to Leung, he explained that Osnis was just joking. (*Id.* ¶ 61.)

Starting in 2016, Defendants also made a series of derogatory comments about Plaintiff's "culture." (*Id.* ¶ 71.) For example, they asked why Plaintiff was 26 years old and not yet married, if she was going to be "sold off for a camel," and whether she knew "what happens in [her] culture between a husband and wife." (*Id.* ¶¶ 71, 96.) Plaintiff reported this harassment to a non-defendant co-owner of Downtown Pharmacy. (*Id.* ¶¶ 72–75.) In April 2016, Plaintiff was promised a meeting with Osnis and Leung to discuss her complaints, but such a meeting never occurred and Defendants' behavior did not change. (*Id.* ¶¶ 75–76.)

Defendants also threatened to physically hurt Plaintiff whenever she made a mistake at work. (*Id.* ¶¶ 62–70.) Leung made comments like these every day that he worked the same shift as Plaintiff. (*Id.* ¶ 67.) Sometimes, Osnis joined in. (*Id.* ¶ 69.) Defendants also repeatedly mocked Plaintiff's weight and her efforts to exercise. (*Id.* ¶¶ 80–82, 110.)

Defendants also made multiple comments to Plaintiff that were sexual in nature. For example, in March 2017, Osnis began repeatedly asking Plaintiff whether she "want[ed] these nuts," smirking and laughing such that Plaintiff believed he intended the statement to sound sexual. (*Id.* ¶¶ 97–101.) Then, on May 3 or 4, 2017, Plaintiff approached Osnis to give him a fist bump before she left work. (*Id.* ¶ 102.) Osnis, however, responded, "What, you want me to fist you?

3

Okay, I'll fist you," and proceeded to make a sexually suggestive motion with his hands. (*Id.* ¶¶ 103–105.)

On May 8, 2017, Osnis and Leung organized a staff meeting. (*Id.* ¶ 123.) At the meeting, Plaintiff indicated that she was concerned about Osnis's inappropriate behavior, including his "fisting" comment. (*Id.* ¶ 125.) Leung told Plaintiff to discuss the matter with them in private after the meeting. (*Id.* ¶ 128.) When Plaintiff met privately with Osnis and Leung, Defendants discussed the meaning of "fisting," laughing as they did so. (*Id.* ¶ 137.) Osnis apologized to Plaintiff, but Leung shifted the blame to Plaintiff, noting that the way she eats bananas at work is sexual. (*Id.* ¶¶ 132–138.) The next day, Plaintiff left work early because she was not feeling well. (*Id.* ¶ 142.) Later that evening, Osnis told Plaintiff that Leung's wife would be taking over Plaintiff's shift for the following day and Plaintiff should come to work on May 11. (*Id.* ¶ 146.) When Plaintiff arrived on May 11, Osnis and Leung presented her with a document to sign indicating that she was being disciplined for cellphone use, making personal calls from the pharmacy phone, and leaving work early on May 9 without subsequently bringing a doctor's note. (*Id.* ¶ 148). Defendants indicated that they would fire Plaintiff if there were any further issues. (*Id.* ¶ 149.) When Plaintiff refused to sign the disciplinary notice, Defendants ordered her to go home. (*Id.* ¶ 153–158.) A few days later, Plaintiff was terminated. (*Id.* ¶ 182.) Plaintiff was subsequently hired, in August 2017, by Windsor Pharmacy as a pharmacy technician. (*Id.* ¶ 187.) However, Plaintiff was fired after about a week of work. (*Id.* ¶ 189.) Her employer indicated that she spoke to Downtown Pharmacy and believed that Plaintiff was not a "good fit" for the position at Windsor Pharmacy. (*Id.* ¶ 193.)

## II. LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

4

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

### III. PLAINTIFF'S § 1981 RACE DISCRIMINATION CLAIM SURVIVES

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The section thus prohibits racial discrimination "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004). The prohibition "encompasses discrimination based on ancestry or ethnic characteristics." *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)). It, however, does not extend to discrimination based solely on gender, religion,

5

or national origin. *See id.* (citing *Saint Francis Coll.*, 481 U.S. at 613; *Runyon v. McCrary,* 427 U.S. 160, 167 (1976)).

Section 1981 does not itself "specifically authorize[ ] private lawsuits to enforce" its prohibitions, but the Supreme Court has "created a judicially implied private right of action." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1015 (2020). A plaintiff bringing a Section 1981 claim "may allege that discrimination occurred in the form of discrete adverse employment actions, as well as by means of conduct creating a 'hostile work environment.'" *Rubert v. King*, No. 19 Civ. 2781 (KMK), 2020 WL 5751513, at *6 (S.D.N.Y. Sept. 25, 2020). Additionally, to prevail on a motion to dismiss, "a plaintiff must initially plead . . . that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast*, 140 S. Ct. at 1019.

Here, Plaintiff alleges both a hostile work environment and discriminatory adverse employment action, namely Defendants disciplining her and terminating her employment. (Compl. ¶ 270.) To succeed on a hostile work environment claim, "a plaintiff must show that her workplace was 'permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.'" *Watkins v. New York City Transit Auth.*, No. 16 Civ. 4161 (ER), 2020 WL 1888839, at *8 (S.D.N.Y. Apr. 16, 2020) (quoting *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011)). Plaintiff alleges that she was the only South Asian employee at Downtown Pharmacy and that Defendants made several racially-charged comments to her over the course of her employment. (*Id.* ¶ 271.) Defendants alleged comments were varied and targeted Plaintiff's race, gender, religion and national origin. Nonetheless, comments such as those associating Plaintiff with ISIS and querying whether she would be sold for a camel because "that's

6

how your culture works," are plausibly connected to race, regardless of whether they also touch on religion and national origin. Plaintiff alleges that such comments were made frequently and cites specific instances that cover the period of 2015 through 2017. Moreover, Plaintiff alleges that at least some comments were made in front of customers. This Court is also mindful that "whether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry," *Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007), and, accordingly, "is generally inappropriate for the Court to determine on a motion to dismiss," *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 224 (E.D.N.Y. 2018). Liberally construed, Plaintiff has adequately alleged that Defendants made repeated comments directed at her race and ethnicity that a reasonable person would find to be hostile and interfere with the conditions of her employment. Because Plaintiff's allegations are, at least, sufficient to support her claim of a hostile work environment, her count of race discrimination pursuant to Section 1981 (Count 11) survives Defendants' motion to dismiss.

## IV. PLAINTIFF'S § 1981 RETALIATION CLAIM IS DISMISSED

Plaintiff also alleges a retaliation claim under Section 1981, arguing that Defendants disciplined and fired her because she reported and opposed racist comments and actions taken against her. Plaintiff, however, fails to plausibly allege any connection between any complaint she made regarding racist comments and Defendants' decision to discipline and, ultimately, fire her. If anything, the complaint alleges that Defendants' actions were taken in direct response to complaints by Plaintiff regarding sexual harassment. Plaintiff does not allege that she raised any concerns of racial discrimination at the May 8 staff meeting and the discussion at the subsequent private meeting she had with Defendants was limited to discussions regarding sexually suggestive comments.[2] Indeed, the last alleged comments that can be plausibly construed as racially

---

[2] Plaintiff also asks this Court to construe the sexual comments that Plaintiff objected to and that immediately preceded her termination as reflecting racist stereotypes. This Court doubts the validity of

7

motivated occurred in February 2017 and there is no allegation that Plaintiff reported these comments. (*See* Compl. ¶ 96.) Accordingly, Plaintiff's Section 1981 claim of retaliation (Count 12) is dismissed.

## V. PLAINTIFF'S OVERTIME WAGE CLAIM IS DISMISSED

Plaintiff asserts a claim for unpaid overtime wages under NYLL. (Compl. ¶¶ 282–290.) Plaintiff's allegations, however, consist of nothing more than a bare recital of the elements of such a claim. Indeed, Plaintiff does not even allege the period of time during which she was not paid overtime wages. Plaintiff fails to adduce sufficient facts to support her claim for unpaid overtime wages. Her claim (Count 13) is dismissed.

## VI. CONCLUSION

Defendants' motion to dismiss, (ECF No. 9), is GRANTED to the extent that Plaintiff's claims for retaliation under Section 1981 (Count 12) and unpaid overtime wages under NYLL (Count 13) are dismissed.[3]

Plaintiff requests leave to amend her complaint in the event of dismissal, but has not proffered any proposed amendment. Plaintiff may file a letter motion to amend attaching a proposed amended complaint, provided the amendments submitted are not futile. *See AEP Energy Srvs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) ("Leave to amend

---

Plaintiff's argument and, in any event, notes that Plaintiff did not sufficiently allege that these particular comments were grounded in racial and ethnic stereotypes.

[3] Defendants also ask this court to dismiss Plaintiff's state and local law claims relating to events alleged to have occurred before May 1, 2017—the limit of the three-year statute of limitations that applies to such actions. Plaintiff's state and local law claims, however, include claims of a hostile work environment, which are timely so long as one act occurred during the relevant statutory period. As Plaintiff's complaint alleges that Defendants' discriminatory comments continued throughout the course of her employment, this Court declines to dismiss her state and local law claims on statute of limitations grounds at this stage. Defendants may renew any such argument at summary judgment.

may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact.").

The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
March 30, 2021

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge